UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEADRICK TEAGUE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 14 C 6950 |
| | ) | |
| v. | ) | Judge Sara L. Ellis |
| | ) | |
| ERIK A. MIEHLE, et al., | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANTS' RESPONSE TO PLAINTIFFS' PETITION FOR ATTORNEYS' FEES</u>**

Defendants Miehle, Blomstrand, Salvetti, Seng, Carlquist, Storrie, Lipa, Daly, Wallace, Cervantes, Doerge, and the City of Chicago, by their attorneys, Kenneth M. Battle, Winnefred Monu, Jessica Gomez-Feie, and O'Connor & Battle, LLP, respond to Plaintiffs' Petition and Memorandum in Support of Petition for Attorneys' Fees and Costs, ECF No. 233, as follows:

**INTRODUCTION**

Plaintiffs' counsel unabashedly claim they are due $86,749.50 per year for fees and costs accumulated over a five-year span—from October 15, 2013 through October 29, 2018—on a case in which the six Plaintiffs received an average of $10,001.00, or $60,006.00 *total*. Plaintiffs' counsel argue that they are thus owed the full amount of fees and costs allowed by the Offer of Judgement, or $239,964.00, because that amount is only 57.08% of the attorneys' fees they raked up over the years. Plaintiffs' counsel's arguments are unconvincing—especially as they attempt to shift the burden onto Defendants rather than focus on proving the reasonableness of their rates and the number of hours they claim. Accordingly, for the reasons stated below, Defendants request that the Court reduce Plaintiffs' attorneys' fees to $39,994.

**STANDARD OF REVIEW**

The Court may, in its discretion, award reasonable attorneys' fees to a prevailing party in

a §1983 action. 42 U.S.C. § 1988(b). In deciding a reasonable award of attorneys' fees, the Court begins by calculating the lodestar amount. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The lodestar amount is calculated by multiplying the hours reasonably expended by the plaintiff's attorneys by their reasonable hourly rates. *Id.* The Court may then adjust the lodestar amount depending on a variety of factors, including the degree of success, the novelty and difficulty of the issues, awards in similar cases, and the relationship between the lodestar amount and the damages awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 434 (1983). "A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (quoting *Hensley*, 461 U.S. at 435–36). "Trial judges have broad discretion to adjust bloated bills for attorney's fees." *Id*. at 552.

The party seeking fees bears the burden of proving the reasonableness of both the rate sought and the number of hours claimed. *Hensley*, 461 U.S. at 437. An applicant must also "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id*.

## ARGUMENT

### I. PLAINTIFFS' COUNSEL SEEKS EXCESSIVE RATES.

Plaintiffs' counsel spent nearly three pages and a lengthy footnote of their 15-page fee petition listing cases dating back as far as 2006 in support of an increase to their hourly rates. ECF No. 233 at 13-15; n.3. Missing from their petition is *Baker v. Ghidotti*, No. 11 C 4197, 2018 WL 1610263, at *3 (N.D. Ill. Apr. 3, 2018) (Leinenweber, J.). It is the most recent case in this district that sets fees for the same attorneys and paralegals in this case, and as such, is arguably the best evidence in support of establishing reasonable hourly rates for them in this case.

However, *Baker*'s glaring omission from the petition clearly demonstrates that Plaintiffs' counsel lack strong evidence to support their requested rates, and rebut the rulings in *Baker*.

### a. Evidence of Rates

The fee applicant bears the burden of producing satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community. *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (citations omitted). "If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id*. (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996)). Additionally, if the fee applicant does not satisfy its evidentiary burden, then "the district court can independently determine the appropriate rate." *Montanez*, 755 F.3d at 553.

"[C]onclusory affidavits from attorneys 'merely opining' on the reasonableness of another attorney's fee – unlike affidavits describing what 'comparable attorneys charge for similar services'-have little probative value." *Montanez,* 755 F.3d at 554 (quoting *Pickett*, 664 F.3d at 647). See also *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001) (opinions of other practitioners regarding the appropriate rate for attorney's services without specific evidence of what they had charged clients were "not well substantiated" and could be given less probative value by court).

### i. Irene Dymkar

Plaintiffs' counsel points to previous rates awarded to Ms. Dymkar as evidence in support of her requested $495/hour rate. However, contrary to what Plaintiffs' counsel claim in the underlying petition, Ms. Dymkar's rate was most recently set last year at $425/hour by Judge Harry D. Leinenweber in *Baker,* 2018 WL 1610263, at *3. Ms. Dymkar claims that her "rate was last set at $465/hour by Judge Rebecca R. Pallmeyer, in *Nelson v. Lis*, 09 C 883, N.D.Ill. (Doc.

3

244 at p. 7) on March 28, 2017, and again by Judge Manish S. Shah, in *Wilson v. Baptiste, et al.*, 13 C 7845, N.D.Ill. (Doc. 286 at p. 4) on July 13, 2017." ECF No. 233 at 11. While it is true that those judges set Ms. Dymkar's rate at $465/hour, they did so in 2017. That Ms. Dymkar was awarded $425/hour *within the past year* is strong evidence of her present market rate. The fact that Plaintiffs' counsel failed to mention Ms. Dymkar's most recently-awarded hourly rate is concerning. Plaintiffs' counsel may argue that the $425/hour rate awarded by Judge Leinenweber was initially determined in 2015 and therefore did not merit mentioning. However, Judge Leinenweber adopted his reasoning[1] for setting Ms. Dymkar's rate at $425/hour in his 2018 ruling. *Baker*, 2018 WL 1610263, at *3. He concluded that Ms. Dymkar's rate should remain at $425/hour due to her respective degree of experience, previous fee awards, and the rates earned by other civil rights attorneys. *Id*. Ms. Dymkar's rate should be $425/hour in this case[2].

As additional evidence in support of her requested rate, Ms. Dymkar attaches her own self-serving declaration and the declarations of attorneys Janine Hoft and Jeff Neslund. These documents do not support the increase in Ms. Dymkar's most recently awarded hourly rate from $425 to $495. In fact, they are as unpersuasive today as they were in January 2015 when they were filed by Plaintiffs' counsel in support of their fee petition in *Baker v. Ghidotti, et al.*, 11-cv-4197, ECF Nos. 231-7 and 231-8, attached hereto as Exhibits B and C. Just as they did then, "the

---

[1] Judge Leinenweber reasoned: "Dymkar has not presented sufficient evidence to show that her rates are on par with Loevy's, even though she has practiced longer. As Judge Virginia M. Kendall noted in 2012, when she adopted Magistrate Judge Sidney I. Shenkier's recommendation of an hourly rate of $330 for Dymkar, 'Ms. Dymkar's record, while extended in time, lacks the experience and jury verdicts in police misconduct cases to warrant such an excessive hourly rate.' *Ragland v. Ortiz*, No. 08 C 6157, 2012 WL 4060310, at *3 (N.D.Ill. Sept. 14, 2012). Indeed, Dymkar only began to focus exclusively on civil rights cases in 2006. (Dymkar Aff., Ex. E to Pl.'s Mem., ECF No. 231–5, ¶ 12.) Based on the hourly rates Dymkar has been awarded in the past, which range from $330–$425 per hour, and the affidavits she has submitted, which suggest fees ranging from $425–$535 per hour, the Court finds $425 per hour to be a reasonable rate placed firmly within the middle of the spectrum. Given that Dymkar was awarded rates as low as $330 in 2012, the Court finds that this award adequately reflects the increased experience Dymkar has gained since then." *Baker*, 2018 WL 1610263, at *3.

[2] Defendants did not become aware of Judge Leinenweber's 2018 *Baker* opinion until preparing this response. Accordingly, Defendants have edited the Local Rule 54.3 Joint Statement to reflect their position that Ms. Dymkar rate should be $425/hour. A redlined copy of the Local rule 54.3 Joint Statement is attached hereto as Exhibit A. (redlined joint statement).

4

affidavits [Ms.] Dymkar … submitted speak more to the attesting attorneys' experience than they do to [Ms.] Dymkar's." *Baker v. Ghidotti*, No. 11 C 4197, 2015 WL 1888004, at *3 (N.D. Ill. Apr. 24, 2015), *aff'd in part, vacated in part sub nom. Baker v. Lindgren*, 856 F.3d 498 (7th Cir. 2017). Mr. Neslund's April 2014 and Ms. Hoft's January 2015 *Baker* affidavits are substantively the same as the ones filed in this case despite being dated years apart—they were both submitted to support Ms. Dymkar's request for a rate of $495/hour. *See* Exs. B and C; ECF Nos. 233-19; 233-20.

Plaintiffs' counsel nonetheless submitted Mr. Neslund and Ms Hoft's affidavits again to this Court as evidence to support an increase of Ms. Dymkar's hourly rate to $495. Having done so actually has the opposite effect—the affidavits show that Ms. Dymkar's work had the same worth for the 4.5 and 3.5 years that passed between Mr. Neslund and Ms. Hoft signing the *Baker* affidavits and the affidavits submitted in this case. Undeniably, Mr. Neslund and Ms. Hoft's sworn opinions regarding the worth of Ms. Dymkar's work are the same now as they had been in April 2014 and January 2015, respectively. This supports Judge Leinenweber's finding that despite the passage of some years, Ms. Dymkar's hourly rate should remain at $425/hour. *Baker*, 2018 WL 1610263, at *3. Finally, a rate of $425/hour for Ms. Dymkar in this case fairly reflects the age of this case, one she started work on in October 2013. *See* Billing Statement for Dymkar's Legal Services, ECF No. 233-10. Accordingly, a rate of $425/hour is reasonable.

### ii. Attorneys Shamoyita DasGupta and Daniel Regenscheit

Plaintiffs' counsel's requested rate increase from $230/hour to $260/hour for attorney work performed by Ms. DasGupta and Mr. Regenscheit is unreasonable. Plaintiffs' counsel failed to mention the $230/hour rate awarded to Ms. DasGupta and Mr. Regenscheit by Judge Leinenweber in *Baker* less than a year ago on April 3, 2018. *Baker*, 2018 WL 1610263, at *2. Specifically, Judge Leinenweber's decision is completely glossed over when Plaintiffs' counsel

5

argue that Ms. DasGupta's rate should be $260/hour because the rate of $230/hour was first set when she had one year of experience, and three years have passed since then. ECF No. 233 at 12. Plaintiffs' counsel may attempt to bury the 2018 *Baker* rates, but in determining Ms. DasGupta and Mr. Regenscheit's rate of $230/hour, Judge Leinenweber relied on the same cases as Plaintiffs' counsel do in their fee petition—*Nelson v. Lis* and *Wilson v. Baptiste*—and still determined that the rate of $230/hour for each of them is reasonable. *Baker*, 2018 WL 1610263, at *2. Finally, the rate of $230/hour is especially reasonable considering that both attorneys billed for work done when they each had less than a year of experience as attorneys. Ms. DasGupta was admitted to the bar in November 2015, and her first billing entry in this case is dated March 4, 2016. *See* ECF Nos. 233-21; 233-11. Similarly, Mr. Regenscheit was admitted to the bar on November 10, 2016, and his first billing entry as an attorney in this case is dated November 23, 2016. *See* ECF Nos. 233-22; 233-12. Therefore, Defendants request that this Court maintain Ms. DasGupta and Mr. Regenscheit's attorney rate at $230/hour.

### iii. Daniel Regenscheit's work as a law student/law clerk.

Plaintiffs request that Mr. Regenscheit receive a rate of $135/hour for his work on this case while he was a law student/law clerk in 2016. ECF Nos. 233-1; 233-13. However, as of a few months ago, a rate of $100/hour for a law clerk is reasonable in this District. *See, e.g., Adamik v. Motyka, et al.*, 2018 WL 3574751, at *5 (N.D. Ill. Jul. 25, 2018); *Smith v. Altman*, 2015 WL 5675376, at *6 (N.D. Ill. Sept. 21, 2015) (Ellis, J.) (law clerk hourly rate of $100 reasonable); *Reid v. Unilever United States, Inc.*, 2015 WL 3653318, at *19 (N.D. Ill. June 10, 2015), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) (same). Therefore, Defendants request that this Court apply a rate of $100/hour for Mr. Regenscheit's law clerk work.

### iv. Paralegals

As Plaintiffs point out, they were awarded a paralegal rate of $125/hour by Judge Shah in *Wilson v. Baptiste* on July 13, 2017. ECF No. 233 at 15. The same rate was deemed reasonable by Judge Leinenweber in *Baker* for the same attorneys and paralegals within the past year. *Baker*, 2018 WL 1610263, at *2. Accordingly, the Court should award the same rate here for work done by paralegals Kaliski, Means, and Zaroff as well as for the paralegal work done by Ms. Dymkar, Ms. DasGupta, and Mr. Regenscheit. Plaintiffs' counsel do not submit any affidavits or declarations supporting the increase in the paralegal rate from $125/hour to $135/hour. Nor do they state that any of the paralegals are certified as such. Plaintiffs' counsel simply argue that because four years have passed since the initial setting of the $125/hour paralegal rate, it should be raised. This argument is unpersuasive, especially given that Judge Leinenweber found the $125/hour rate for the same paralegals reasonable within the last year. *Id*. All paralegal work in this case should be awarded at $125/hour rate.

## II. PLAINTIFFS' COUNSEL SEEKS PAYMENT FOR AN EXCESSIVE NUMBER OF HOURS DUE TO OVERBILLING.

The manner in which Plaintiffs' counsel has handled this fee petition is a microcosm of how they handled the underlying litigation: one that includes blatant disregard for rules and the Court's standing orders, frivolous motion practice, and a penchant for misdirection and moving the target. These tactics result in overbilling—so much so that Plaintiffs' counsel claim they are entitled to a lodestar that is a stunning *seven times the total amount all six Plaintiffs received*.

### a. *The manner in which Plaintiffs' counsel handled this fee petition and obtained defense counsel's billing statements is illustrative of their tendency to overbill.*

On October 19, 2018, after the parties' initial pretrial conference, Plaintiffs' counsel demanded defense counsel's billing statements submitted for payment to the City of Chicago. *See* electronic correspondence between Irene Dymkar and Kenneth Battle, November 12 through

7

November 15, 2018, attached hereto as Exhibit D. That demand came before Plaintiffs' counsel produced their own billing statements, or even attempted to engage in a meaningful discussion pursuant to Local Rule 54.3. In fact, the case had not even been resolved at that point—Defendants made the Offer of Judgement ten days later on October 29, 2018, and Plaintiffs ultimately accepted it on November 4, 2018. ECF No. 217.

Rather than reaching out to defense counsel for a proper meet and confer pursuant to Local Rule 54.3, Plaintiffs' counsel disregarded the rule and made a Freedom of Information Act ("FOIA") request to the City of Chicago for defense counsel's billing statements on November 5, 2018, a day after accepting the Offer of Judgment. *See* FOIA Officer's Response to Plaintiffs' counsel Shamoyita DasGupta, Nov. 20, 2018, attached hereto as Exhibit E. Indeed, Plaintiffs' counsel did not reach out to defense counsel until November 12, 2018—and only then it was to demand defense counsel's billing statements once again and to warn defense counsel about the possibility of filing a motion for fees on fees. Ex. D. Defense counsel indicated they would respond to Plaintiffs' counsel as soon as possible—after discussing the situation with their client. *Id*.

Rather than file a Motion for Instructions pursuant to Local Rule 54.3(g) or follow the Court's standing orders regarding motion practice and the meet and confer requirement, Plaintiffs' counsel filed a motion to compel Defendants to produce their billing and payment records a little over 48 hours after demanding defense counsel's billing statements for the first time since accepting the Offer of Judgment (and before producing their own billing statements per Local Rule 54.3). Pls.' Mot. to Compel, Nov. 15, 2018, ECF No. 219. The Court denied Plaintiffs' motion and ordered Plaintiffs to produce their billing and payment records to Defendants by November 26, 2018, and for Defendants to review Plaintiffs' records for any

disputes and accordingly provide their billing and payment records to Plaintiffs by December 17, 2018. Minute Entry, Nov. 20, 2018, ECF No. 227.

On the same day that the Court denied Plaintiffs' motion to compel, Plaintiffs' counsel received defense counsel's billing records for October 2014 through August 2018 in response to the November 5, 2018 FOIA request—effectively circumventing the Court's ruling. Ex. E. Defendants timely supplemented their billing statements through October 31, 2018—two days beyond what Plaintiffs are allowed for attorney's fees and costs pursuant to the terms of the Offer of Judgment. Pls.' Notice of Acceptance of the Offer of J., Nov. 4, 2018, ECF No. 217. Despite having defense counsel's relevant billing statements—the only billing statements necessary pursuant to the terms of Offer of Judgment—Plaintiffs' counsel continues to believe a dispute exists as to defense counsel's billing statements and continues to threaten filing a fees-on-fees petition. *See* Local Rule 54.3(e) Joint Statement, Jan. 21, 2019, ECF No. 233-1 at ¶¶ 6, 8(d), 8(e); Pls.'s Pet. and Memo. in Support of Pet. for Attys.' Fees and Costs, Jan. 21, 2019, ECF No. 233 at 10.

This Court has found that defense counsel's billed hours are not a necessary part of the fee petition, but are rather a benchmark to allow the Court to consider reasonableness. *Smith,* 2015 WL 5675376, at *7 (citing *Delgado v. Mak*, No. 06 C 3757, 2009 WL 211862, at *5–6 (N.D. Ill. 2009)). Accordingly, Plaintiffs' counsel's continued fixation on scrutinizing defense counsel's billing statements to justify theirs is a waste of time. ECF No. 233 at 3, 8, 10. Similarly, Plaintiffs' counsel's dogged attempts at obtaining defense counsel's billing statements before turning theirs over resulted in a lot of unnecessary work (that they have already threatened to bill Defendants for). Had Plaintiffs' counsel stepped back and followed the protocol set forth in Local Rule 54.3, there would have been no need to file a motion to compel. This exemplifies Plaintiffs' counsel's adeptness at creating issues that allow them to overbill.

9

As such, Plaintiffs' counsel's repeated threats about filing a fees-on-fees motion ring hollow. A plaintiff who accepts an offer of judgment cutting off attorneys' fees incurred after a certain date cannot recover fees on fees occurring after the agreed upon date, unless the fees on fees are incurred "responding to frivolous arguments." *World Outreach Conference Ctr. v. City of Chicago*, 234 F. Supp. 3d 904, 917–18 (N.D. Ill. 2017) (citing *Morjal v. City of Chi.*, 774 F.3d 419, 422–23 (7th Cir. 2014)); *see also Stephens v. Cirrincione*, 2012 WL 2872448, at *3 (N.D. Ill. Jul. 11, 2012) ("When an offer of judgment unambiguously limits recovery of attorney's fees, courts should honor that limitation." (*citing Decker v. Transworld Sys., Inc.*, 2009 WL 2916819, at *2 (N.D. Ill. Sept. 1, 2009))). In threatening a fees-on-fees motion from the get-go, Plaintiffs' counsel unreasonably assumed that Defendants' objections to Plaintiffs' billing statement would be "frivolous arguments" to which they would have to respond. Defense counsel had not even laid eyes on the billing statements because Plaintiffs had not produced them yet. Again, Plaintiffs' position as to a fees-on-fees motion goes against the spirit of Local Rule 54.3, and is exemplary of how Plaintiffs' counsel has handled this litigation over the past five years: unreasonably and unnecessarily contentious to allow for overbilling.

### b. Defendants' Objections to Specific Time Spent by Plaintiffs' Counsel.

Objections to hours sought in a petition for attorneys' fees must be stated "with particularity to prevent parties from dumping voluminous amounts of fee data on the bench for the judge to sort through and resolve." *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F.Supp.2d 674, 681 (N.D. Ill. 2012) (internal quotations omitted). The failure to provide sufficiently detailed objections to a fee petition may waive any objections. *Id.* (collecting cases). Line-by-line objections raised in a spreadsheet are adequate "so long as the party requesting fees has an opportunity to respond . . . ." *Montanez v. Simon*, 755 F.3d 547, 555 (7th Cir. 2014). As such,

Defendants attach hereto annotated versions of Plaintiffs' time sheets with objections as Group Exhibit F. As shown below, Defendants' objections are specific enough to allow a response. *Id*.

### i. Vagueness, Block Billing, or Insufficient Documentation

If a party claims hours that are vague or inadequately documented, the Court "may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Smith*, 2015 WL 5675376, at *7 (*citing Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000)).

Further, when time records do not show the time spent on individual tasks, the Court cannot determine whether the claimed time is reasonable. Therefore, the Seventh Circuit has rejected block billing. *Smith*, 2015 WL 5675376, at *7 (citing *Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 421 F.Supp.2d 1117, 1119 (N.D. Ill. 2006) ("The Seventh Circuit has made it very clear that a fee applicant must show the time spent on specific tasks rather than simply the total time spent on a bundle of tasks.")).

Here, Defendants' objections to Plaintiffs' billing entries that are vague, provide insufficient documentation, or contain block billing are indicated as such in Group Exhibit F. Defendants request that the Court strike the entries highlighted in Group Exhibit F because they are unable to determine whether the time spent on each task was reasonable.

### ii. Excessive or Duplicative Entries

Throughout this case, multiple attorneys and paralegals spent an inordinate amount of doing the exact same task, including internal strategy meetings. It is entirely within the discretion of the court to reduce the lodestar amount to take into account duplicative work, and it is appropriate to do so here. *See Pickett*, 664 F.3d at 643. Here, the hours Defendants deem excessive, duplicative, or unnecessary are objected to as such in Group Exhibit F. Accordingly, Defendants request that the Court strike the duplicative hours billed by Ms. DasGupta and Mr.

Regenscheit because given their legal experience, most, if not all, of the duplicative tasks performed by Ms. Dymkar were pedagogical in nature. Defendants should not have to subsidize Ms. DasGupta and Mr. Regenscheit's legal education from Ms. Dymkar. Finally, Defendants request that this Court reduce the lodestar by striking the entries objected to as excessive.

### iii. Billing for Paralegal, Administrative, or Clerical Tasks

Courts "disallow ... those hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.'" *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999); see also *Smith*, 2015 WL 5675376, at *7 (citations omitted) (finding that the Court may not award fees at attorneys' rates for work that does not require that level of skill). Time attorneys and paralegals spent "organizing file folders, preparing document[s], copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters" is not compensable. *Christian Assembly Rios de Agua Viva v. City of Burbank, Illinois*, No. 13 C 622, 2018 WL 2041703, at *4 (N.D. Ill. May 2, 2018) (Ellis, J) (citing *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006)). Time spent doing these tasks must be "absorbed as overhead into the attorneys' billing rate." *Smith*, 2015 WL 5675376, at *7 (citations omitted). Clerical tasks that should be absorbed as overhead into the attorneys' billing rate pursuant to *Smith* are objected to as such in Group Exhibit G. Defendants request that the Court strike these entries. Additionally, Defendants' objections to entries by attorneys that should be billed at a paralegal rate are objected to as such attached hereto as Exhibit H. Defendants request that the Court adjust the attorneys' rates to the paralegal rate of $125/hour for these tasks.

### iv. Attorneys Billing for Unreasonable Issues Created by Themselves

The "touchstone" in determining whether an attorney's time is compensable, even if spent

12

on an unsuccessful argument or motion, is whether that argument (or motion) was "reasonable." See *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998).

Here, incredibly, Plaintiffs' counsel spend a large portion of their petition arguing that they are somehow due their requested fees because Defendants allegedly obstructed the disclosure of evidence. ECF No. 233 at 7-8. Instead of using the limited space to articulate the reasons their requests are reasonable, Plaintiffs' counsel wrongfully shift their burden to Defendants and attempt to relitigate issues that this Court has ruled on, including but not limited to the pretrial disclosure of a gang arrest card that stemmed from a 2011 arrest—which was an arrest completely unrelated to this case. *Id*. *See* Mot. for Sanctions Hr'g Tr., Feb. 1, 2018, attached hereto as Exhibit I. The Court summarily denied Plaintiffs' motion for sanctions against defense counsel relating to the gang arrest card. *Id*. at 36:4-10. Despite the significant amounts of time defense counsel and the Court spent explaining to Plaintiffs' counsel how the gang arrest cards would not be used at trial, Plaintiffs' counsel continued to make it an issue—at both the pretrial conferences, in pretrial filings, and even now in their fee petition. It should be noted that, despite a settlement offer of $100,000.00, Plaintiffs' counsel continually indicated that the matter could not be resolved for just money damages, as Plaintiffs reportedly needed contact cards and the gang arrest cards deleted from the Chicago Police Department computer system. However, once it became clear that Defendants' Offer of Judgment allowed Plaintiffs' counsel access to a fee petition up to $239,964.00, the contact card and gang arrest issues disappeared.

Defendants object to Plaintiffs' counsel billing for creating unreasonable arguments and motions as indicated in Group Exhibit F. Accordingly, this time should be subtracted from Plaintiffs' counsel's total hours. The same holds true for the entirety of the summary judgment proceedings, and various other failed, unreasonable motions filed by Plaintiffs' counsel throughout the litigation of this matter.

### III. THE LODESTAR SHOULD BE SIGNIFICANTLY REDUCED DUE TO PLAINTIFFS' COUNSEL'S TACTICS THROUGHOUT THE CASE.

#### a. *Plaintiffs' Counsel Should Not Be Rewarded for Unreasonably Refusing to Submit a Settlement Demand Until 2018—Nearly Four Years After the Complaint was Filed.*

In evaluating the proper amount of fees, Defendants ask the Court to factor in Plaintiffs' refusal to submit a reasonable demand, and the increased costs associated with the case by excluding hours that were needlessly spent on this case. Given that Plaintiff's counsel stubbornly refused to issue a settlement demand until January 2018, the hours expended by Plaintiffs' counsel should be reduced further. The Court reasonably could discount much of the work Plaintiff's counsel did between October 14, 2016 and January 21, 2018, when Magistrate Judge Gilbert requested that Plaintiffs provide a settlement demand letter to Defendants, and when Plaintiffs provided their first settlement demand. ECF No. 233-6 at 14:16-23; ECF No. 233-7.

#### b. *Plaintiffs Only Had Partial Success—Unlike Their Counsel.*

Plaintiffs' recovery compared to what they initially demanded indicates only partial success, and thus warrants a reduction in fees. Plaintiffs' initial demand consisted of removal of the contact cards created arising out of the underlying incident and Deadrick Teague's gang arrest card from the Chicago Police Department's records, and $95,000.00 for the individual Plaintiffs, exclusive of fees and costs. ECF Nos. 233 at 6; 233-7.

The court may, in an exercise of its discretion, adjust the lodestar based on the results obtained by the plaintiff. See *Hensley*, 461 U.S. at 434; see also *Montanez*, 755 F.3d at 557 (stating that "the district court has broad discretion to determine the appropriate reduction" when adjusting a lodestar to reflect limited success). When considering a reduction, the damages recovered by plaintiff are relevant. "[A]lthough the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified lodestar amount." *Spegon*, 175 F.3d at 558.

14

*Montanez* is particularly instructive here. The Seventh Circuit noted that the district judge has discretion to determine "whether the plaintiff's lawyers would have spent substantially less time on the case had they been more realistic." *Montanez*, 755 F. 3d at 557.

Here, as Plaintiffs' counsel themselves point out, they pled an astounding 608 claims in this case. ECF No. 233 at 3. However, as mentioned above, this is ultimately a case in which the six Plaintiffs received an average of $10,001.00--or $60,006.00 *total*. As such, each of Plaintiffs' claims average a worth of about $98.70 each ($60,006.00 total awarded to all Plaintiffs divided by all 608 claims). This is hardly the win (for Plaintiffs) that Plaintiffs' counsel make it out to be. Yet, Plaintiffs' counsel claim they are entitled to nearly $90,000.00 a year in attorneys' fees for this case. Accordingly, Defendants request that the Court exercise its discretion and significantly slash Plaintiffs' lodestar so that Plaintiffs' counsel is only entitled to approximately $39,994.00 for their work on this case. This is the only number that can be considered fair by Plaintiffs, as it represents the amount Plaintiffs' counsel could have taken if they had endeavored to settle the case years ago, as opposed to protracted litigation. Ultimately, this case was about five people who were searched at a party. No arrest were made and there were no physical injuries to anyone. Awarding fees much higher than this amount would encourage such protracted and unnecessary litigation in the future.

  **IV. PLAINTIFFS' COUNSEL ARE NOT ENTITLED TO REIMBURSEMENT OF ALL OF THEIR COSTS.**

Plaintiffs should not be reimbursed for the costs totaling $170.00 relating to potential witness Edward D. Lewis's trial subpoena because he was never disclosed in Plaintiffs' 26(a) Disclosures. As such, he would not have been able to testify. These costs should be stricken.

Additionally, Defendants request that Plaintiffs' copy costs be reduced by 40% to reflect a more reasonable rate of $0.10/copy rather than $0.25/copy. Accordingly, Plaintiffs' total copy costs should be reduced from $11,790.23 to $7,074.14.

Dated: January 19, 2019                                     Respectfully submitted,

                                                                 By:    */s/ Jessica Gomez-Feie*
                                                                                  Jessica Gomez-Feie

Kenneth M. Battle
Winnefred A. Monu
Jessica Gomez-Feie
Attorneys for Defendants
O'CONNOR & BATTLE, L.L.P.
20 N. Clark St., Suite 1600
Chicago, Illinois 60602
(312) 786-4600
jgf@mokblaw.com