# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEADRICK TEAGUE, CHARSAE PERRY, COREY M. ISLEY, ANTHONY HICKS, ARCHIE HAYES, and JOYCE PERRY, <br><br> Plaintiffs, <br><br> v. <br><br> ERIK A. MIEHLE, MATTHEW R. BLOMSTRAND, JEFFREY T. SALVETTI, ERICK P. SENG, ANTHONY J. JANNOTTA, BRIAN A. STORRIE, KEVIN L. CARLQUIST, NICHOLAS A. CERVANTES, ADAM A. WALLACE, AARON M. DALY, JOSEPH E. LIPA, ANDREW N. DOERGE, and CITY OF CHICAGO, <br><br> Defendants. | No. 14 C 6950 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

After years of litigating alleged constitutional violations under 42 U.S.C. § 1983, the parties reached a settlement on the eve of trial. On November 4, 2018, Plaintiffs Deadrick Teague, Charsae Perry, Corey M. Isley, Anthony Hicks, Archie Hayes, and Joyce Perry provided the Court with notice that they had accepted Defendants Erik A. Miehle, Matthew R. Blomstrand, Jeffrey T. Salvetti, Erick P. Seng, Anthony J. Jannotta, Brian A. Storrie, Kevin L. Carlquist, Nicholas A. Cervantes, Adam A. Wallace, Aaron M. Daly, Joseph E. Lipa, Andrew N. Doerge, and City of Chicago's Offer of Judgment. Pursuant to the Offer of Judgment, the City agreed to pay Plaintiffs a total of $60,006, with attorneys' fees and costs for each Plaintiff capped at $39,994. In their fee petition and bill of costs, Plaintiffs request that the Court grant them the full amount they could recover, which is $239,964. After review of Plaintiffs' petition and Defendants' objections, the Court finds reasonable an award of $239,964 in attorneys' fees

and costs. Having resolved the attorneys' fees and costs issue, the Court terminates this civil case.

## LEGAL STANDARD

The Court may, in its discretion, award reasonable attorneys' fees to a prevailing party in a § 1983 action. 42 U.S.C. § 1988(b). In deciding a reasonable award of attorneys' fees, the Court begins by calculating the lodestar amount. *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). The Court calculates the lodestar amount by multiplying the hours reasonably expended by the plaintiff's attorneys by their reasonable hourly rates. *Id.* The Court may then adjust the lodestar amount depending on a variety of factors, including the degree of success, the novelty and difficulty of the issues, awards in similar cases, and the relationship between the lodestar amount and the damages awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3, 434, 103 S. Ct. 1933, 76 L Ed. 2d 40 (1983). "A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (quoting *Hensley*, 461 U.S. at 435–36).

Federal Rule of Civil Procedure 54(d) provides that unless a federal statute, the Federal Rules, or the Court provides otherwise, the prevailing party in litigation should receive its costs. Pursuant to 28 U.S.C. § 1920, the Court may tax as costs certain fees, including those for "transcripts necessarily obtained for use in the case" and "for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." The prevailing party is presumptively entitled to costs. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). The prevailing party maintains the burden of establishing that the potentially recoverable costs it incurred were reasonable and necessary. *Trs. of Chi.*

*Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). If the prevailing party satisfies that burden, the losing party bears the burden of showing that the costs are inappropriate. *Beamon*, 411 F.3d at 864. The Court enjoys "wide discretion in determining and awarding reasonable costs." *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 642 (7th Cir. 1991).

## ANALYSIS

**I.     Costs**

Plaintiffs seek costs of $13,355.49. As discussed above, the prevailing party is presumptively entitled to recoverable costs, but bears the burden of showing that those costs were reasonable and necessary. *Beamon*, 411 F.3d at 864; *Chi. Plastering Inst. Pension Trust*, 570 F.3d at 906. Only the costs listed in 28 U.S.C. § 1920 are recoverable—these include fees of the clerk, fees for transcripts necessarily obtained for use in the case, and docket fees. 28 U.S.C. § 1920. Defendants specifically challenge $170 in costs related to a trial subpoena for potential witness Edward D. Lewis and Plaintiffs' per-page copy cost of $0.25. The Court examines each category of claimed costs in turn.

### A.     Fees of the Clerk

Plaintiffs seek $400.00 for fees for the clerk. The $400.00 docketing fee for the complaint is authorized by statute and therefore recoverable. *See* 28 U.S.C. § 1920(1).

### B.     Fees for Service of Summons and Subpoena

Plaintiffs seek $250.00 for serving two witnesses subpoenas through a process server for the February 12, 2018 trial date. Defendants object to the cost for one of those witnesses—Edward D. Lewis, who they argue could not have testified in light of the fact that Plaintiffs failed to disclose him in their Rule 26(a) disclosures. Plaintiffs respond that they subpoenaed Lewis as

a potential rebuttal witness, after Defendants disclosed Teague's gang arrest contact card and before the Court ruled that the parties could not discuss the gang arrest contact card at trial. The Court finds this reasonable—Plaintiffs may recover the costs for service of subpoenas.

**C.     Transcripts**

Plaintiffs seek $11,790.23 for transcripts obtained for use in the case. Defendants do not object to these costs, and such costs are authorized under § 1920(2). Plaintiffs may recover these costs.

**D.     Witness Fees**

Plaintiffs seek $135.00 in witness fees. Again, Defendants object to the witness fee for Lewis. As discussed above, the Court finds this witness reasonable and declines to deduct from Plaintiffs' awarded costs on this basis.

**E.     Fees and Disbursements for Printing**

Plaintiffs seek $719.65 in copying costs. Defendants argue that Plaintiffs $0.25 per page rate is unreasonable and request that the Court substitute a $0.10 per page rate instead. "Courts in this District have regularly found that photocopying rates between $0.10 and $0.20 per page are reasonable for purposes of Section 1920(4)." *Hilmann v. City of Chicago*, No. 04 C 6671, 2017 WL 3521098, at *12 (N.D. Ill. Aug. 16, 2017); *Chapman v. Wagener Equities, Inc.*, No. 09-CV-07299, 2017 WL 2973420, at *2 (N.D. Ill. July 12, 2017). The Court reduces Plaintiffs' awarded copying costs from $719.65[1] to $577.40, to reflect a copying cost per page of $0.20, with the exception of the color printing for exhibits, which the Court finds reasonable.

---

[1] In their response, Defendants use the costs for Plaintiffs' deposition and transcript fees rather than copying costs. The Court presumes this was an error.

4

### F. Other Costs

Plaintiffs seek $60.61 in "other costs," specifically $31.70 for general postage and $28.91 for copies of three criminal court files for Deadrick Teague. Section 1920 authorizes copying costs, and the Court finds it reasonable that Plaintiffs would seek copies of Deadrick Teague's past criminal files, given his role as the main plaintiff and one of the central witnesses in the case. In addition, the Seventh Circuit "has construed section 1920 to include amounts spent on filing fees, postage, telephone calls and delivery charges." *Tchemkou*, 517 F.3d 506, 512 (7th Cir. 2008). Defendants have no objection; the Court allows these costs.

### G. Total Costs Awarded

Plaintiffs are therefore entitled to $13,213.24 in costs.

## II. Lodestar

### A. Attorney Billing Rates

"A reasonable hourly rate is based on the local market rate for the attorney's services," with "[t]he best evidence of the market rate . . . the amount the attorney actually bills for similar work." *Montanez*, 755 F.3d at 553. If not available, then the Court "may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Id.* "The fee applicant bears the burden of 'producing satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). "If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth 'a good reason why a lower rate is essential.'" *Id.* (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1313 (7th Cir. 1996)). If the fee applicant

does not satisfy its evidentiary burden, then "the district court can independently determine the appropriate rate." *Montanez*, 755 F.3d at 553.

Defendants dispute all of Plaintiffs' requested rates. The Court examines each requested rate to determine the appropriate hourly rate for Plaintiffs' attorneys and paralegals.

### 1. Irene K. Dymkar

Plaintiffs request $495 per hour for Dymkar's work. In support of their request, they submit Dymkar's affidavit, as well as affidavits from attorneys Jeffrey S. Neslund and Janine Hoft, and they cite Dymkar's fees in recent cases as well as a number of cases they believe are comparable. Neslund and Hoff, who have been practicing law for approximately twenty-five and thirty-five years, respectively, both attest that they believe Dymkar's requested rate is reasonable and provide examples of the rates other attorneys received for similar types of work. *See* Doc. 233-19; Doc. 233-20. Neslund received a rate of $425 per hour in 2014, and Hoff is aware of civil rights attorneys receiving rates as high as $575 per hour. *Id.*

Dymkar has been a trial attorney for more than forty years. Recently, courts have awarded her rates as high as $475 per hour. *See Wilbon v. Plovanich*, No. 12 C 1132, 2019 WL 417309, at *2 (N.D. Ill. Feb. 1, 2019) (setting Dymkar's rate at $475 per hour); *Wilson v. Baptiste*, No. 13 CV 7845, Doc. 286 at 4 (N.D. Ill. July 13, 2017) (setting Dymkar's rate at $465 per hour); *Nelson v. Lis*, No. 09 C 883, 2017 WL 1151055, at *4 (N.D. Ill. Mar. 28, 2017) (setting Dymkar's rate at $465 per hour). Plaintiffs also cite to two recent settlements where they argue Dymkar received a rate of $495 per hour. *See Hadnott v. Kelly*, 07 C 6754, Doc. 593 at 4–6 (N.D. Ill. Nov. 5, 2015); *Armstrong v. Maloney*, 08 C 4398, Doc. 441 at 2 (N.D. Ill. Nov. 16, 2014). "However, both settlements included a lump sum for attorneys' fees rather than an

itemization of hourly fees." *Wilbon*, 2019 WL 417306, at *1 n.2 (referring to the same two settlements).

Defendants argue that the Court should set Dymkar's rate at $425 per hour, based on the rate another court in this district used in *Baker v. Ghidotti (Baker II)*, No. 11 C 4197, 2018 WL 1610263, at *2 (N.D. Ill. Apr. 3, 2018). Defendants filed their response before *Wilbon*, which dispenses of their argument that Baker is the closest indicator of her present market rate. But even without consideration of *Wilbon*, *Baker II* is not the most recent snapshot of Dymkar's rate. Although the court issued *Baker II* in April 2018, it actually determined Dymkar's rate in April 2015—the court issued *Baker II* in light of remand from the Seventh Circuit on an issue unrelated to Dymkar's rate. *See id.* at *1; *Baker v. Ghidotti (Baker I)*, No. 11 C 4197, 2015 WL 1888004, at *3 (N.D. Ill. Apr. 24, 2015), *vacated in part, aff'd in part sub nom. Baker v. Lindgren*, 856 F.3d 498, 500 (7th Cir. 2017). *Wilson* and *Nelson* both provide more recent analysis regarding the appropriate fee for Dymkar—in fact, the *Nelson* court took the *Baker* court's analysis into account when deciding Dymkar's appropriate rate. *Nelson*, 2017 WL 1151055 at *3.

*Wilbon* determined a reasonable rate for Dymkar based upon her experience level and rates set by earlier courts. Based on Dymkar's level of experience and, most importantly, the recent rates set by other courts in this district, the Court finds a rate of $475 per hour appropriate.

### 2. Shamoyita M. DasGupta

Plaintiffs request $260 per hour for DasGupta's work. DasGupta has been practicing for four years. In *Wilbon*, *Baker*, *Wilson*, and *Nelson*, the courts all set her rate at $230 per hour. *See Wilbon*, 2019 WL 417306 at *2; *Baker II*, 2018 WL 1610263 at *2; *Wilson*, Doc. 286 at 4;

*Nelson*, 2017 WL 1151055 at *4.[2] Plaintiffs argue that DasGupta has gained considerable experience[3] since the court first set her rate at $230, including serving as a trial attorney in four trials (and examining witnesses in some of those trials).[4] Defendants object to the rate increase, arguing that Court should apply the rate recently set at $230 in *Baker II*.

Although DasGupta has gained experience since her rate was first set in 2017, another court in this district very recently decided that $230 per hour was appropriate, and DasGupta has not offered "any direct evidence of fee awards of $260 per hour for lawyers with similar experience." *Wilbon*, 2019 WL 417306 at *2. Thus, the Court finds a rate of $230 per hour appropriate for DasGupta.

### 3. Daniel H. Regenscheit

As with DasGupta, Plaintiffs request $260 per hour for Regenscheit's work post admission to the bar. Regenscheit has less experience than DasGupta, and recent courts have also set his rate at $230. *See Wilbon*, 2019 WL 417306 at *2; *Baker II*, 2018 WL 1610263 at *2. The Court finds $230 to be an appropriate rate for Regenscheit.

### 4. Paralegals

Finally, Plaintiffs request $135 per hour for paralegal work, as well as Regenschiet's work prior to passing the bar. They note that *Wilson*, *Nelson*, and *Baker I* all set the rate for paralegals at $125 per hour and contend that the passage of time merits an increase in rate.

---

[2] Unlike Dymkar, the *Baker* court did not set a rate for DasGupta in its initial 2015 decision, and so it completed its analysis of the proper rate for her in 2018. *Baker II*, 2018 WL 1610263 at *2.

[3] Plaintiffs argue that DasGupta has three additional years of experience, but reviewing the relevant dates proves otherwise—the *Nelson* court decided her rate in April 2017, and so it appears she has gained two years of experience.

[4] Although Plaintiffs state she examined witnesses in three of the trials, DasGupta's affidavit only references examining witnesses in two. *See* Doc. 233-21 ¶ 6.

8

Defendants object to the increase, arguing that the cases that Plaintiffs cite establish a market rate of $125 per hour. In addition, Defendants argue that the rate for Regenscheit before he passed the bar should be $100, citing other cases where courts have awarded $100 per hour rates to law clerks. *See, e.g., Adamik v. Motyka*, No. 12 C 3810, 2018 WL 3574751, at *5 (N.D. Ill. June 25, 2018).

Again, Plaintiffs have not identified direct evidence of fee awards of $135 per hour for paralegals. *Wilbon* considered this exact issue weeks ago and decided that a rate of $125 per hour was reasonable. 2019 WL 417306 at *2. Accordingly, the Court finds $125 per hour to be a reasonable rate for the paralegals who worked on this case. The Court is unpersuaded by Defendants' argument that it should award a lower rate for Regenscheit's work prior to passing the bar—other courts in the district have found it reasonable to award the same $125 per hour rate it awarded to paralegals to Regenscheit for his work prior to passing the bar. *See id.*; *Baker II*, 2018 WL 1610263 at *2. The Court agrees and awards Regenschiet the same $125 per hour rate for his work prior to passing the bar.

### B. Hours Expended

Defendants also object to time entries in Plaintiffs' billing records used to calculate the lodestar. Defendants object to specific time entries on the basis that they are vague, duplicative, excessive, clerical tasks that should be either stricken or billed at lower rates, and unreasonable. The Court addresses each of these arguments in turn.

#### 1. Vague Time Entries

Defendants object to a number of Plaintiffs' billing entries on the basis that they are vague, provide insufficient documentation, or contain block billing. Upon review of Defendants' chart of objections, attached as Exhibit F to their response, the Court has been unable to find any

9

specific objection on the basis of block billing, and so it overrules Defendants' objection regarding block billing.

If a party claims hours that are vague or inadequately documented, the Court "may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000). Many of Defendants' objections on this ground center on entries along the lines of "prepare for deposition"—Defendants complain that Plaintiffs do not specify which deposition. Within the context of the rest of Plaintiffs' billing statements, however, the deposition for which Plaintiffs' attorneys prepared becomes obvious—those entries are within a few days of a specific deposition. Other vagueness objections include that Plaintiffs have not specified enough which documents or issues they are reviewing, drafting, or researching (e.g., for the entry "review court order," Defendants object that Plaintiffs do not specify which order) and that Plaintiffs do not detail the reasons for communications with attorneys unrelated to this case (e.g., Dymkar's entry on 7/29/215: "Draft email to attorney T Hamilton"). Plaintiffs respond that these objections seek a level of specificity that Defendants themselves do not use in their own billing records for this case and that some of these entries are redacted to protect attorney/client privilege and work product. Plaintiffs do not specify which entries are redacted for privilege, so the Court cannot evaluate that argument, but the Court agrees that Defendants seek to hold Plaintiffs to a higher standard than they hold themselves. Defendants' billed hours are not a necessary part of the fee petition, but rather a benchmark to allow the Court to consider reasonableness. *See Adamik*, 2018 WL 3574751 at *7 (finding it "unpersuasive for defendants to cavil at plaintiffs' division of labor as purportedly overlapping and inefficient, when defendants' own expenditure of time cannot be

evaluated for comparative purposes because they do not account for their own time at all" (internal quotation marks omitted)).  However, Plaintiffs' entries regarding communication with other attorneys are not sufficiently detailed for the Court to determine whether such time was reasonable and necessary to the litigation, and so the Court will not allow fees for those entries.[5]

### 2. Duplicative or Excessive Billing

Additionally, Defendants argue that some of Plaintiffs' time entries are excessive and that Plaintiffs' attorneys double-billed, performing the same tasks needlessly.

First, regarding Defendants' objections that some of Plaintiffs' time entries are excessive, the Court finds that some of Defendants' objections are valid.  For example, Dymkar's time entry for a meet and confer with opposing counsel on February 12, 2016 is 2.7 hours, while Defendants' counsel Kenneth Battle's corresponding entry is only 2.3 hours.  *See* Doc. 233-17 at 47.  Plaintiffs do not provide any explanation for the discrepancy.  However, many of Defendants' objections do not hold up upon closer review—for example, Defendants object to Dymkar's 0.9 hour time entry on February 18, 2016 for a phone call with Battle where it is impossible to tell how much time Battle spent on the phone call because he block billed.  *See id.* at 48.  They also object to Dymkar's 0.7 hour entry on April 26, 2017 for a conference with DasGupta on the basis that the corresponding entry by DasGupta reflects less time, but DasGupta

---

[5] These entries are, for Dymkar: 7/29/15 (0.1 hours drafting email to attorney T. Hamilton); 7/29/15 (0.1 hours reviewing email from attorney K. Turkcan); 7/30/15 (0.1 hours reviewing email from A. Kaliski to attorney K. Turkcan); 7/31/15 (0.1 hours reviewing email from attorney K. Turkcan); 8/1/15 (0.1 hours reviewing email from attorney K. Turkcan); 8/3/15 (0.1 hours on email to attorney K. Turkcan); 8/3/15 (0.1 hours reviewing email from A. Kaliski to attorney K. Turkcan); 8/3/15 (0.1 hours reviewing email from attorney K. Turkcan); 8/4/15 (0.3 hours drafting email to attorney K. Turkcan); 8/1/15 (0.2 hours reviewing email from attorney K. Turkcan); 8/18/15 (0.2 hours on telephone conference with attorney K. Turkcan); 10/27/15 (0.5 hours on letter to attorney with confidential information); 2/12/18 (0.5 hours consulting with attorney S. Rauscher); 10/12/18 (0.6 hours consulting via telephone with attorney R. Dvoark); 10/12/18 (0.7 hours consulting via telephone with attorney M. Armour); 10/27/18 (0.8 hours drafting email to K. Flaxman; and 10/28/18 (0.2 hours reviewing email from K. Flaxman).  For DasGupta: 1/16/18 (0.1 hours leaving voicemail for technician Alexander Zeier); and 1/17/18 (0.1 hours on telephone conference with technician Alexander Zeier).  For Regenscheit: 10/29/18 (0.8 hours on "University Bluhm Legal Clinic").

11

actually has two entries on that day for conferences with Dymkar, and the second entry matches up with Dymkar's entry. *See* Doc. 233-11 at 5. For Plaintiffs' time entries where corresponding entries reveal less time spent on the same activity, the Court will reduce the time billed to the time billed in the corresponding entry.[6] Defendants also object to certain other entries as excessive, such as time spent reviewing court orders, reviewing photographs and videos relevant to the case, and drafting motions *in limine*. With the exception of a few additional entries,[7] the Court finds these entries reasonable.

Second, Defendants object to duplicative tasks, including internal strategy meetings. Plaintiffs respond that its attorneys' time spent on "intra-team communications" is compensable and necessary work. "The practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Tchemkou*, 517 F.3d at 511–12. Here, Defendants identify 15.6 hours of time entries for DasGupta and 4.6 hours of time entries for Regenscheit that were spent in internal conference with each other and Dymkar. 20 hours of internal conferences over the course of three years of litigation is reasonable—and the Court notes that Defendants' counsel also spent time in internal conferences discussing the case. *See, e.g.*, Doc. 233-17 at 158–61 (on 10/30/18 and 10/31/18, three of Defendants' attorneys each billed 2.2 hours in internal strategy meetings). The same logic applies to Defendants' other duplicative objections—Defendants cannot reasonably object to Plaintiffs' having multiple attorneys present at various court hearings, conferences with

---

[6] These entries are, for Dymkar: 2/12/16 (2.7 hours reduced to 2.3 hours for meet and confer with K. Battle and A. Schumann); 7/25/16 (0.3 hours reduced to 0.1 hours for conference with S. DasGupta).

[7] These entries are paralegal Amy Kaliski's entry on 6/29/15 (0.6 hours reduced to 0.2 hours for attempts to contact clients) and paralegal Angela Zaroff's entry on 7/1/15 (1.0 hours reduced to 0.1 hours for leaving a voicemail for client).

opposing counsel, and depositions where they often had three attorneys attending such matters as well. "Use of one or more lawyer[s] is a common practice, primarily because it often results in more efficient distribution of work." *Gatreaux v. Chicago Housing Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). The entries that Defendants object to as duplicative are reasonable, and the Court declines to adjust them.

### 3. Administrative and Clerical Work

Defendants also ask the Court to deduct time spent on administrative or clerical tasks. Plaintiffs cannot recover time spent by its attorneys and paralegals on "tasks that would not normally be billed to a paying client," as well as "on tasks that are easily delegable to non-professional assistance." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999) (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). Therefore, time attorneys and paralegals spent "organizing file folders, preparing document[s], copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters" is not compensable. *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006). On the other hand, time paralegals spent on "factual investigation, conducting legal research, summarizing depositions, checking citations, compiling statistical and financial data, preparing court documents, serving processes, and discussing the case with attorneys" is "sufficiently complex to justify the efforts of a paralegal." *Id.*

Defendants list time entries from Dymkar, DasGupta, and Regenscheit that they believe are purely administrative and that the Court should stricke altogether in Exhibit G to their response, and time entries from Dymkar, DasGupta, and Regenscheit that they believe should be

13

billed at a paralegal rate in Exhibit H to their response.[8] *See* Doc. 235 at 52–61. The Court agrees that tasks such as downloading court orders and updating calendars are administrative tasks that Plaintiffs' counsel should absorb as overhead into the attorneys' billing rates. The Court will reduce Dymkar's hours by 0.4 hours, DasGupta's hours by 1.1 hours, and Regenscheit's hours by 0.2 hours. Similarly, the Court strikes DasGupta's hours downloading, scanning, and reviewing documents from a private investigator (0.2 hours). Additionally, the Court discounts Dymkar's time corresponding with this Court's courtroom deputy (0.1 hours) and reviewing change of address and updating files (0.1 hours), DasGupta's time updating a chart of depositions ordered and received (1.7 hours), and Regenscheit's time reviewing returned mail (0.1 hours).

The Court also agrees that some of Plaintiffs' attorneys' time entries reflect tasks that should have been completed by a paralegal.[9] These include time preparing exhibits, drafting and filing affidavits of service and change of address, preparing documents, drafting cover sheets and notices, and summarizing depositions. However, time spent drafting subpoenas, drafting FOIA requests, communicating with clients and witnesses, analyzing and selecting which documents to use as exhibits, and drafting a retainer agreement are all reasonably billed at attorney rates. With this in mind, after review of Defendants' objections in Exhibits G and H, the Court will further reduce Dymkar's hours by 17.1, DasGupta's hours by 3, and Regenscheit's hours by 0.2, and bill those hours at their paralegals' rate. Overall, as a result of work that Plaintiffs' counsel should have billed at paralegal rates and work that they should have absorbed into attorneys' overhead,

---

[8] Plaintiffs ask that the Court strike these objections on the basis that they are indecipherable. Although the exhibits are frustrating to read, it is reasonably clear that some malfunction caused Defendants' spreadsheets to omit the letters "i" and "l." The Court is able to understand Defendants' objections, and so it will consider the objections on the merits.

[9] The Court notes that Defendants double-counted some hours by putting the entries they already recommended be stricken in their chart of attorney hours that they believe should be billed at a paralegal rate. The Court only counted those entries in its analysis once.

the Court reduces Dymkar's hours by 17.7, DasGupta's hours by 6, and Regenscheit's hours by 0.5.

4. **Unreasonable Issues**

Defendants further challenge Plaintiffs' billing records to the extent that they include entries for time spent on "unreasonable issues created by themselves." The bulk of these objections focus on time spent on tasks related to the parties' cross-motions for summary judgment. The Court ultimately did not allow either side to file a motion for summary judgment due to both parties' repeated failure to adhere to this Court's summary judgment procedures. Defendants also object to time spent working on Plaintiffs' motions to compel and for sanctions (which the Court denied), preparing for a settlement conference that ultimately did not occur, researching claims that Defendants argue ultimately would have been dismissed, and communicating with witnesses who were not disclosed or who Defendants claim would not be able to testify at trial. Essentially, Defendants argue that Plaintiffs' time spent on these unsuccessful arguments and motions was unreasonable and thus Plaintiffs should not be able to recover attorneys' fees for that time.

"[A] losing argument in support of a fully successful claim for relief is fully compensable time." *Jaffee v. Redmond*, 142 F.3d 409, 414 (7th Cir. 1998) (internal quotation marks omitted). "'[T]he touchstone in such a case is not whether a particular argument was successful, but rather whether it was reasonable.'" *Bellamy v. City of Chicago*, No. 15 C 02678, 2017 WL 3675729, at *13 (N.D. Ill. Aug. 25, 2017) (quoting *Jaffee*, 142 F.3d at 414). Defendants spend their argument in this section debating whether Plaintiffs' attorneys were reasonable in spending the amount of time they did litigating the issues surrounding contact cards. But Defendants' argument is that Plaintiffs continuing to make the contact cards an issue after the Court's ruling

15

on the motion for sanctions was unreasonable, not that the motion for sanctions itself was unreasonable. After reviewing Defendants' objections, the Court cannot conclude that any of the objected-to time entries were patently unreasonable. Both sides were unsuccessful at complying with this Court's summary judgment procedures, and the Court notes that Defendants still paid their attorneys for the time that they spent on the matter. While the settlement conference, communications with witnesses whom Plaintiffs did not ultimately use, and the motion to compel did not ultimately prove successful, all of these actions drove the case forward. Finally, with regard to claims that Defendants argue would have ultimately been dismissed, such an issue is not properly before the Court because the parties settled all of the claims. The Court never decided whether to dismiss those claims, and so it cannot find that such claims are unreasonable.

The only other type of entry that Defendants object to as "unnecessary" are entries for internal communications where the other person involved in the internal communication does not have a corresponding time entry. These objections are ironic in light of Defendants' objections that Plaintiffs' attorneys' time spent in internal conferences is duplicative. The fact that Plaintiffs did not submit Dymkar's time entries for all of her conferences with DasGupta or Regenscheit does not mean that those conferences did not happen or that the time entry was unnecessary or excessive. The Court will not reduce Plaintiffs' hours on the basis of this objection.

### C. Modified Lodestar

In summary, taking into account the modified rates and above detailed exclusions, the lodestar amount is $384,761.50. The following table summarizes the Court's calculations:

| Deductions from Total Hours | | | | |
|---|---|---|---|---|
| Attorney/Paralegal | Vague | Excessive Billing | Clerical Work | Unreasonable Billing |
| Irene K. Dymkar | 4.0 | 0.6 | 17.7 | 0.0 |
| Shamoyita M. DasGupta | 0.2 | 0.0 | 6.0 | 0.0 |
| Daniel H. Regenschiet (post bar) | 0.8 | 0.0 | 0.5 | 0.0 |
| Daniel H. Regenschiet (pre bar) | 0.0 | 0.0 | 0.0 | 0.0 |
| Amy Kaliski | 0.0 | 0.4 | 0.0 | 0.0 |
| Abigail Means | 0.0 | 0.0 | 0.0 | 0.0 |
| Angela Zaroff | 0.0 | 0.9 | 0.0 | 0.0 |
| Total | 5.0 | 1.9 | 24.2 | 0.0 |

| Modified Lodestar | | | |
|---|---|---|---|
| Attorney/Paralegal | Total Hours After Deductions | Modified Rate | Lodestar |
| Irene K. Dymkar | 583.1 | $475 | $276,972.50 |
| Shamoyita M. DasGupta | 359.7 | $230 | $82,731.00 |
| Daniel H. Regenschiet (post bar) | 64.6 | $230 | $14,858.00 |
| Daniel H. Regenschiet (pre bar) | 6.5 | $125 | $812.50 |
| Amy Kaliski | 39.5 | $125 | $4,937.50 |
| Abigail Means | 6.5 | $125 | $812.50 |
| Angela Zaroff | 8.8 | $125 | $1,100.00 |
| Paralegal Work by Attys | 20.3 | $125 | 2,537.50 |
| Total | | | $384,761.50 |

### III. Adjustment to the Lodestar

Having calculated the lodestar amount, the Court must determine whether that amount should be adjusted upward or downward. *Hensley*, 461 U.S. at 430 n.3. Although the Court takes into account a number of considerations, "the most critical factor is the degree of success obtained." *Id.* at 436. "A plaintiff who achieves 'excellent results' should receive the entire lodestar, but where 'a plaintiff has achieved only partial or limited success,' the lodestar 'may be an excessive amount.'" *Montanez*, 755 F.3d at 556 (quoting *Hensley*, 461 U.S. at 435–36). The Court can measure the degree of Plaintiffs' success by considering the amount of the damages obtained compared to the recovery Plaintiffs sought: "[t]he trial judge is in a better position to assess whether the unsuccessful claims were important or trivial; whether [the] judgment is a spectacular success, a dismal failure, or something in between; and whether the plaintiff's lawyers would have spent substantially less time on the case had they been more realistic." *Id.* at 557; *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) ("[A] fee request that dwarfs the damages award might raise a red flag[.]"); *Spegon*, 175 F.3d at 558 ("[A]lthough the fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified lodestar amount.").

Here, Plaintiffs argue that they achieved excellent results because they prevailed on all of their claims and obtained $60,006.00 in damages. Plaintiffs note that the number of successful claims in this case (when counting each claim per plaintiff separately) totals 608. In addition, Plaintiffs note that this case was intensely litigated and involved unusual aspects that required labor-intensive work, particularly given the number of witnesses involved, the lack of documentation regarding the incident, and various discovery disputes between the parties. In

light of this, Plaintiffs ask that the Court award the total amount possible under the offer of judgment: $239,964.00.

Defendants respond that Plaintiffs only received about $98.70 per successful claim, and that Plaintiffs' attorneys' fees are excessive in light of the damages Plaintiffs obtained. According to Defendants, when compared to Plaintiffs' original demand, their recovery can only be considered a partial success. In addition, Defendants argue that Plaintiffs' refusal to issue a settlement demand until January 2018 should result in a significant reduction of recoverable fees. Defendants request that the Court limit Plaintiffs' attorneys' fees to $39,994.00.

Both parties dedicate considerable portions of their briefs to criticizing the other's conduct in the preparation of this petition. The parties are correct that this conduct is representative of each other's conduct throughout the case—rather than working together to find reasonable solutions, each side escalated and battled even small issues to the point that they could not even cooperate enough to draft a statement of agreed facts for summary judgment. Given the relatively low amount of quantifiable damages and labor-intensive requirements of litigating a case with so many witnesses and so little documentation, this is a case that should have settled years before it did. Instead, the attorneys in this case litigated it for over four years and billed over $660,000 in fees. And, although each side attempts to portray the other as the sole reason this case did not settle earlier, review of the transcripts from the parties' appearances before Judge Gilbert regarding their referral for a settlement conference shows a lack of cooperation from both sides.

However, given the relatively low amount of quantifiable damages and the fact that the settlement was somewhat close to Plaintiffs' initial settlement demand, Plaintiffs did obtain comparitively good results. In addition, Plaintiffs are certainly not the only side responsible for

the delay in settlement in this case. The cap on Plaintiffs' attorneys' fees, in light of the Court's $13,213.24 fee award, is $226,750.76, which is approximately 58.9% of the lodestar. The Court finds that a 41% reduction of the lodestar properly reflects the degree of success achieved by Plaintiffs and the fact that both sides share the blame for the delay in settlement. Looking to the Defendants' bills, which the Court considers as a benchmark for reasonableness, Defendants' attorneys billed at least $276,614.90 on this case, despite the fact that their highest rates were significantly lower than Dymkar's. A plaintiff's attorney typically charges higher rates in cases like these (due to the risk that if they do not recover, they will not be paid). Moreover, plaintiffs bear the burden of proof and therefore often expend more time on a case than defendants. *See Delgado*, 2009 WL 211862, at *5 ("[M]any courts have remarked that usually a plaintiff, who has to carry the burden of proof, spends a great deal more time on litigation than a defendant." (alterations omitted) (internal quotation marked omitted)). A reduction to $226,750.76 still brings Plaintiffs' attorneys' fees significantly below Defendants' attorneys' fees.

The Court finds an award of $226,750.76 for attorneys' fees reasonable.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' petition for attorneys' fees [233] and motion for judgment on Plaintiffs' bill of costs [225] in part. The Court awards Plaintiffs $239,964.00 in attorneys' fees and costs. Having resolved the issue of attorneys' fees and costs, the Court terminates this civil case.

Dated: March 19, 2019

　　　　　　　　　　　　　　　　　　　　　SARA L. ELLIS
　　　　　　　　　　　　　　　　　　　　　United States District Judge